**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **DOUGLAS BERRY,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:15-cv-150-DN-PMW** |
| **VAN RU CREDIT,** | **Chief District Judge David Nuffer** |
| **Defendant.** | **Chief Magistrate Judge Paul M. Warner** |

Chief District Judge David Nuffer referred this matter to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Before the court are the parties' cross-motions for summary judgment.[2] The parties both seek judgment on Plaintiff Douglas Berry's claims that Defendant Van Ru Credit ("Van Ru") violated the Fair Debt Collection Practices Act ("FDCPA" or "Act"), *see* 15 U.S.C. §§ 1692 to 1692p, in its attempts to collect on Mr. Berry's defaulted student loans. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motions on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 22.

[2] *See* docket nos. 53 and 54.

# I. BACKGROUND

On August 18, 2014, the United States Department of Education ("Department of Education") placed Mr. Berry's defaulted student loans with Van Ru for collection.[3] On August 19, 2014, Van Ru sent correspondence to Mr. Berry informing him that his loans had been referred to Van Ru for collection.[4] That same day, Mr. Berry spoke with Van Ru's representative, Sargon Khayou, who informed Mr. Berry that his student loans were in federal default, and that the Department of Education has the right to pursue an involuntary administrative wage garnishment or a federal tax offset against him should his student loans remain in default.[5] Mr. Khayou further notified Mr. Berry that if he pursued a voluntary rehabilitation program and made nine consecutive monthly payments, his student loan would no longer be in federal default.[6] In that initial conversation, however, Mr. Khayou did not advise Mr. Berry that he worked for Van Ru; he only named the Department of Education, Van Ru's client.[7]

Mr. Berry told Mr. Khayou that when he spoke with someone previously regarding repayment of his student loans, he was advised he would have to pay $900 per month.[8] In his deposition, Mr. Berry clarified that it was Texas Guaranty Agency, rather than Van Ru, that had told him that his monthly payments would be that much.[9] Mr. Khayou informed Mr. Berry that a

---

[3] *See* docket no. 53, Exhibit B at ¶5.

[4] *See id.* Exhibit C.

[5] *See id.* Exhibit B.3, Call Recording of 8/19/2014 (hereinafter, "Recording 1").

[6] *See id.*

[7] *See id.*

[8] *See id.*

[9] *See id.* Exhibit D at 18.

new rehabilitation program became available on July 1, 2014, in which the Department of Education implemented an income-based repayment plan called the Reasonable and Affordable Payment Program ("Affordable Rehabilitation Program").[10] Prior to July 1, 2014, the Department of Education utilized a program called the Regular/Standard Rehabilitation and Balance Sensitive Repayment Program ("Standard Rehabilitation Program").[11] The Standard Rehabilitation Program allowed each guaranty agency, like Texas Guaranty Agency, the discretion to decide what "reasonable and affordable" was to them in collecting on defaulted student loans.[12] On July 1, 2014, the Standard Rehabilitation Program was no longer an option for rehabilitating student loans with the Department of Education.[13]

The Affordable Rehabilitation Program has two options for debtors to rehabilitate their defaulted loans into good standing: (1) the 15% Rehabilitation and (2) the Financial Information Statement ("FIS") Rehabilitation.[14] The 15% Rehabilitation option allows debtors to pay a monthly amount that is equal to 15% of the amount by which the borrower's adjusted gross income exceeds 150% of the poverty level for his family size and state of residence.[15] The FIS Rehabilitation option is designed for debtors who cannot afford the 15% Rehabilitation payment amount.[16] To be eligible for the FIS Rehabilitation option, a debtor must complete a Financial

---

[10] *See* Recording 1.

[11] *See* docket no. 53, Exhibit B at ¶33.

[12] *See* Gobel, Reyna, *Default Rehab: The Biggest Change to Student Loans in Decades*, June 19, 2014, available at https://www.forbes.com/sites/reynagobel/2014/06/19/default-rehab-the-biggest-change-to-student-loans-in-decades/#1f86bd36f83f (last visited Sept. 11, 2017).

[13] *See id.*; docket no. 53, Exhibit B at ¶34.

[14] *See* docket no. 53, Exhibit B.1.

[15] *See id.*

[16] *See id.*

Disclosure for Reasonable and Affordable Rehabilitation Payments ("FIS Disclosure Form") where the monthly payment amounts are based on gross income less all taxes (federal, state, local, Medicare, and social security) and expenses are factored into the calculation.[17] In the initial telephone call, Van Ru's representatives determine whether a consumer qualifies for FIS Rehabilitation by seeking information regarding the debtor's income in order to calculate the monthly payment.[18] However, the agreement is not finalized until all supporting documents and agreements are sent in by the borrower.[19]

Mr. Khayou informed Mr. Berry that depending on his annual income, he may qualify for monthly payments as low as $5.00.[20] Mr. Khayou also stated that he could not verify that Mr. Berry would qualify for that amount without documentation supporting his annual income.[21] Mr. Berry requested that Van Ru send him all the information in writing.[22] In response, Mr. Khayou incorrectly informed him that all agreements in relation to the rehabilitation program would need to be verbal.[23] During the call, Mr. Berry stated that his annual income for 2013 was $17,000.[24] Mr. Khayou informed Mr. Berry that if his income was $17,000, and could be verified by pay stubs or his 2013 Tax Returns, he would likely qualify for the monthly payments of $5.00.[25] Additionally, Mr. Khayou informed Mr. Berry that if his income was more than the

---

[17] *See id.*

[18] *See id.*

[19] *See id.*

[20] *See* Recording 1.

[21] *See id.*

[22] *See id.*

[23] *See id.*

[24] *See id.*

[25] *See id.*

stated $17,000, his monthly payments would be higher.[26]  Mr. Berry testified that he recalls Mr.

Khayou telling him that his monthly payment may be higher than $5.00 if his financial

information provided does not meet the Department of Education's standards.[27]

Mr. Berry provided Van Ru with paperwork proving his annual income, including pay

stubs and tax returns.[28]  On October 28, 2014, another Van Ru representative, Tara, informed

Mr. Berry that Van Ru had received his 2013 Tax Returns but that his actual annual income was

$23,558, rather than the $17,000 he had represented previously.[29]  Tara then informed Mr. Berry

that he qualified for monthly payments of $76.00 rather than $5.00.[30]  Mr. Berry stated that he

would be unable to make monthly payments of $76.00.[31]  In response, Tara advised Mr. Berry

that he could complete a FIS Disclosure Form and that the Department of Education would

review his income on a monthly basis rather than an annual basis.[32]  Once Mr. Berry submitted

all the financial paperwork to Van Ru, including the FIS Disclosure Form, he was indeed eligible

for the $5.00 per month rehabilitation agreement, and he began making monthly payments of

$5.00.[33]  Mr. Berry completed the program and returned to school.[34]

---

[26] *See id.*

[27] *See* docket no. 53, Exhibit E at 42.

[28] *See id.*

[29] *See id.* at 40; docket no. 53, Exhibit 3 to Exhibit B, Call Recording of 10/28/14 (hereinafter, "Recording 2").

[30] *See* Recording 2.

[31] *See id.*

[32] *See id.*

[33] *See* docket no. 53, Exhibit E at 42-43.

[34] *See id.*

As a debt collection business, Van Ru has written policies and procedures regarding live telephone calls with consumers.[35]  When a Van Ru representative contacts a consumer over the phone they are specifically required to disclose (1) the representative's identity, (2) that the representative is calling from Van Ru Credit Corporation, and (3) that the call is being made on behalf of Van Ru's client.[36]  Further, when a representative contacts a consumer over the phone, the representative is prohibited from making any false or misleading statements to the consumer, including any false representation regarding the representative's identity or where they are calling from.[37]  Representatives have online access to the written procedures, which serve as a reference throughout their employment with Van Ru, and all representatives are trained on Van Ru's policies.[38]

Van Ru's representatives are provided initial and ongoing training with respect to FDCPA and Van Ru's procedures regarding telephone calls with consumers.[39]  Initial training includes a three-week training program, in which the first two weeks of training are performed in a classroom environment, with the third week of training set aside to help transition new hires from the classroom to the floor.[40]  During the initial two-week classroom training sessions, the emphasis is on company policy and the laws and regulations governing collection activities.[41] At the end of this training phase, an exam of the FDCPA is administered, which new hires must

---

[35] *See* id. Exhibit B.1.

[36] *See id.*, at ¶9.

[37] *See id.* at ¶10.

[38] *See id.* at ¶11.

[39] *See id.*

[40] *See id.*

[41] *See id.* at ¶13.

pass in order to continue training activities.[42]  Each missed item is reviewed with new hires to

ensure a complete understanding of the pertinent portions of the FDCPA.  Once a representative

is released to the floor, the representative receives consistent and individualized ongoing training

for the next seven weeks, including side-by-side coaching, system navigation, and work effort

reviews.[43]  During this training process, representatives are repeatedly and specifically trained to

conduct collection calls in the manner described in the written procedures.[44]  Upon completion

of the representatives first ten weeks of training, Van Ru conducts refresher training on a

monthly and as needed basis.[45]  Workshops are periodically scheduled to refresh what was

taught in the initial classroom training sessions in addition to new and remedial training sessions

to ensure the latest techniques and information is available and communicated.[46]  Every January

and July, mandatory retraining and testing also occurs, and if a passing score is not received,

refresher training is conducted and a new examination is administered prior to resumption of

correspondence activities.[47]  Representatives may take the examination three times; a third failing

score results in termination.[48]  Van Ru's management staff also reviews representatives'

performance on a consistent basis to determine any areas that may require additional training.[49]

Representatives who violate Van Ru's policies are subject to disciplinary action up to and

---

[42] *See id.*

[43] *See id.* at ¶¶13-14.

[44] *See id.*

[45] *See id.* at ¶15.

[46] *See id.*

[47] *See id.* at ¶16.

[48] *See id.*

[49] *See id.*

including termination.[50]  Like all Van Ru representative, Mr. Khayou received this training and instruction.[51]

In regard to the August 19, 2014 call, Mr. Khayou failed to follow the policies and procedures of Van Ru.  While Mr. Khayou had online access at all times to the written procedures and received all of the training described above, he nevertheless failed to identify that he was calling from Van Ru on behalf of the Department of Education.  As a matter of regular company practice and custom, every phone call initiated or received by an employee of Van Ru with respect to collection of an account is recorded.[52]  Van Ru utilizes the recordings in its business to conduct periodic review of its employees and to ensure the content of its communications with consumers are compliant with state, federal, and local law.[53]

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Factual assertions may be supported by "citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

---

[50] *See id.*

[51] *See id.* at ¶30.

[52] *See id.* at ¶22.

[53] *See id.* at ¶23.

56(c)(1).  A primary purpose of the summary-judgment rule "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

In the instant case, the parties have filed cross-motions for summary judgment, albeit Mr. Berry seeks only partial summary judgment.  The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case."  *Id.* at 325.  This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case.  *See Johnson v. City of Bountiful*, 996 F. Supp. 1100, 1102 (D. Utah 1998).  Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element."  *Id.*  Rule 56 requires "the nonmovant that would bear the burden of persuasion at trial" to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."  *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998) (quotations and citation omitted).  The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."  *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992).  Mere allegations and references to the pleadings will not suffice.  *See id.*  However, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion."  *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).  With this standard in mind, the court now examines the parties' respective arguments.

## <u>DISCUSSION</u>

Mr. Berry alleges that Van Ru violated the FDCPA by: (1) consenting to a rehabilitation agreement for $5.00 per month, and then reneging on the agreement and demanding more money;[54] (2) threatening garnishment when it did not intend to actually garnish Mr. Berry's wages;[55] (3) placing "telephone calls without meaningful disclosure of the caller's identity";[56] (4) overshadowing the required disclosures by "threatening immediate garnishment" in the first call;[57] (5) falsely stating in the initial call that "all [rehabilitation] agreements have to be verbal" even though Mr. Berry was eventually given and signed a written agreement;[58] and (6) initially stating that Mr. Berry would be required to make monthly payments of $900, but then explaining that as of July 1, 2014 the policy changed even though rehabilitation agreements have always been based on the ability to pay.[59] The parties do not dispute that Mr. Berry is a consumer and that Van Ru is a debt collector attempting to collect on a debut within the meaning of the FDCPA. *See* 15 U.S.C. §1692a(3), (5), (6).

### A. 15 U.S.C. § 1692e(5)

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This portion of the Act specifically prohibits the following conduct: "The threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). Several

---

[54] *See* docket no. 46 at ¶9.

[55] *See id.* at ¶10.

[56] *Id.* at ¶11.

[57] *Id.* at ¶12.

[58] *Id.* at ¶13.

[59] *See id.* at ¶14.

courts have held that a false statement must be material for it to be actionable under the FDCPA. *See Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (mislabeling combined sum of late fees and interest as interest is not actionable under §§ 1692e or 1692f because it is not material); *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (labeling original principal plus compounded interest as "principal" was not a material misstatement under the FDCPA); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009) (holding that materiality requirement applies to a claim under § 1692e). Similarly, this court has previously noted that most courts assessing materiality under § 1692(e), employ an "objective analysis that considers whether 'the least sophisticated debtor would likely be misled by a communication.'" *Wade v. Bonneville Billing and Collections, Inc.*, No. 2:13-cv-0023, 2014 WL 3530146, at *2 (D. Utah July 15, 2014) (quoting *Donohue*, 592 F.3d at 1027). "[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under 1692e." *Id.* (quoting *Donohue*, 592 F.3d at 1027). "The least sophisticated consumer standard ensures protection to all consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Deporter v. Credit Bureau of Carbon Co.*, No. 14-cv-00882-KMT, 2015 WL 1932336, *3 (D. Colo Apr. 28, 2015) (quotations and citations omitted).

While the Tenth Circuit has not specifically addressed materiality under § 1692e, it has done so in considering a claim under § 1692g. *See Maynard v. Cannon*, 401 F. App'x 389, 397 (10th Cir. 2010) (unpublished). Specifically, the court stated that the "FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately

harmless." *Id.* Furthermore, "[m]ateriality is assessed in light of the purpose of the FDCPA, which is to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hudspeth v. Cap. Mgmt Servs., L.P.*, No. 2013 WL 674019, *4 (D. Colo. Feb. 25, 2013) (quotations and citations omitted). This court sees no reason to require that a false statement be material in the context of a claim under § 1692g but not a claim under § 1692e.

As noted above, Mr. Berry alleges that during the initial call, Mr. Khayou threatened "garnishment" and "imprisonment" in violation of § 1692e(5).[60] However, the call recording demonstrates that although garnishment was discussed, Mr. Khayou never "threatened" Mr. Berry with garnishment. Rather, Mr. Khayou informed Mr. Berry that if his loans stay in default, he faced the possibility of involuntary enforcement in the form "of either the administrative wage garnishment or a federal tax offset."[61] It is undisputed that Mr. Berry's loans were in default.

The Department of Education and its collection agencies may issue an administrative wage garnishment of up to 15% of a debtor's disposable earnings. *See* 34 C.F.R. § 34.4(a) ("We may start proceedings to garnish your wages whenever we determine that you are delinquent in paying a debt owed to the United States under a program [the Department of Education] administer[s]."); Department of Labor, Fact Sheet #30: The Federal Wage Garnishment Law, Consumer Credit Protection Act's Title III, Revised Nov. 2016, available at

---

[60] *Id.* at ¶¶10, 12.

[61] Docket no. 53, Exhibit 3 to Exhibit B, Call Recording 1 (hereinafter, "Recording 1").

https://www.dol.gov/whd/regs/compliance/whdfs30.pdf (last visited Sept. 7, 2017) ("The Debt Collection Improvement Act authorizes federal agencies or collection agencies under contract with them to garnish up to 15% of disposable earnings to repay defaulted debts owed the U.S. government.").  However, Mr. Berry's earnings were not garnished because he entered into a rehabilitation agreement that brought his federal loans out of default, and Mr. Berry was able to return to school.  Van Ru's representation with respect to garnishment was not false; Mr. Khayou was merely explaining what could happen if Mr. Berry's loans stayed in default.  Even the least sophisticated consumer would understand that garnishment was a possibility.  Accordingly, this court recommends that summary judgment be granted in favor of Van Ru on Mr. Berry's FDCPA claims that arise out of the alleged threat of garnishment.

In addition, there is no evidence to suggest that Mr. Berry was threatened with imprisonment.  As the call recordings reflect, at no time did Mr. Khayou threaten Mr. Berry with imprisonment for his defaulted loans or even insinuated that was a possibility.  Thus, summary judgment should also be granted with respect to Mr. Berry's FDCPA claims arising out of alleged threats of imprisonment; there is simply no issue of material fact as to whether Van Ru violated 15 U.S.C. § 1692e(5).

### B.  15 U.S.C. § 1692g(b)

Section 1692g of the FDCPA requires, among other things, that debt collectors inform consumers that they have the right to dispute the validity of a debt claim within thirty days of receiving notice of a debt collection action.  *See* 15 U.S.C. § 1692g(a)(3).  In addition, § 1692g(b) states that "[a]ny collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the

debt or request the name and address of the original creditor." *Id.* § 1692g(b). Mr. Berry alleges that Van Ru overshadowed the required disclosures by "threatening immediate garnishment" during the initial call.[62] As noted above, Mr. Khayou informed Mr. Berry that an administrative wage garnishment was a possibility; Mr. Khayou did not set forth a specific time period in which garnishment would take place. The majority of courts considering whether a notice was overshadowed or contradicted conclude that it is a question of law that may be decided at the summary judgment stage. *See Hamilton v. Capio Partners, LLC*, 237 F. Supp. 3d 1109, 1113 (D. Colo 2017).

Under § 1692g(a), a collection agency is required to send the validation notice regarding a debtor's right to dispute the debt or request the name and address of the original creditor within five days of the initial communication. Van Ru sent the required notice the same day the initial contact between Mr. Berry and Mr. Khayou occurred. Because the contact occurred prior to Mr. Berry receiving the notice, there was nothing in that initial contact that could have been overshadowed. Mr. Khayou merely informed Mr. Berry that his employment had been verified and that the Department of Education had the right to enforce an administrative wage garnishment if he did not voluntarily make efforts to repay his defaulted student loans. Mr. Khayou did not threaten "immediate" garnishment, nor did he provide any timeframe for which garnishment would take place. Van Ru did not convey a sense of urgency to Mr. Berry which could have overshadowed his validation rights. Mr. Berry has not provided any evidence to suggest that Van Ru overshadowed the required disclosures. Accordingly, this court

---

[62] Docket no. 46 at ¶12.

recommends that summary judgment be granted in favor or Van Ru with respect to Mr. Berry's claim under § 1692g(b).

### C. 15 U.S.C. § 1692e(10)

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This portion of the Act specifically prohibits the following conduct: "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The court will address each violation of this section of the FDCPA in turn.

### 1. Reneging on Rehabilitation Agreement

Mr. Berry alleges that Van Ru violated § 1692e(10) by agreeing to a rehabilitation agreement for $5.00 per month and then failing to uphold that agreement and requiring him to pay $76.00 per month instead.[63] However, as is apparent from the recording of that initial call, Mr. Khayou did not state categorically that Mr. Berry's payment would be only $5.00 per month; instead, Mr. Khayou informed him that his payments could be that low if he could verify that his income for 2013 was $17,000 as he had claimed.[64] Mr. Khayou also informed Mr. Berry that his payment amount could be more if his income was higher than he had claimed.[65] Furthermore, during his deposition, Mr. Berry admitted that he remembered being told that information.[66] Thus, there was no agreement made in that initial telephone call.

---

[63] *See* docket no. 46 at 9.

[64] *See* Recording 1.

[65] *See id.*

[66] *See* docket no. 53, Exhibit E at 40.

After verifying that Mr. Berry's income qualified him for monthly payments of $76.00, Van Ru's representative, Tara, informed Mr. Berry that if he could not afford that amount he could fill out an additional form regarding his monthly income that would allow for payments of $5.00 per month.[67] Mr. Berry testified that once he submitted all the financial paperwork to Van Ru, including the additional form, he was indeed eligible for the $5.00 per month rehabilitation agreement.[68] He further testified that he completed the rehabilitation agreement by making $5.00 monthly payments for nine consecutive months, which removed his student loan from default, and he was able to return to school.[69]

Thus, Van Ru never reneged on the $5.00 per month rehabilitation agreement, and Mr. Berry has failed to provide evidence to the contrary. Accordingly, this court recommends that summary judgment be granted in favor of Van Ru with respect to Mr. Berry's FDCPA claims arising out of his allegations that Van Ru reneged on its rehabilitation agreement.

### 2. Deception Regarding Texas Guaranty Agency

Mr. Berry alleges that Van Ru violated § 1692e(10) by stating that a previous policy for rehabilitation agreements requiring that Mr. Berry pay $900 per month was replaced by a new program in July 2014. Mr. Berry argues that this previous policy never existed. However, the recording of the initial call demonstrates that it was Mr. Berry who stated that "when they called me, they told me that I would have to pay $900 a month."[70] Mr. Berry also testified that prior to the Department of Education placing Mr. Berry's defaulted student loans with Van Ru, Mr.

---

[67] *See* Recording 2.

[68] *See* docket no. 53, Exhibit E at 43.

[69] *Id.*, Exhibit E at 42.

[70] Recording 1.

Berry was contacted by Texas Guaranty Agency asking for payments of $900 per month.[71]

During that initial call, Mr. Khayou informed Mr. Berry that he would not have to pay $900 per

month as a result of the new program made available on July 1, 2014.[72]  Plaintiff testified in his

deposition that he had no knowledge of the Department of Education policies prior to and after

July 2014.[73]

As discussed above, the Affordable Rehabilitation Program and the FIS Rehabilitation

option that would allow Mr. Berry to make payments of $5.00 per month were not available prior

to July 1, 2014.  This was not a false representation or a deceptive practice in order to collect the

debt.  Nor did Van Ru inform Mr. Berry that he would be required to pay $900 per month.

Furthermore, Mr. Berry ultimately qualified for the $5.00 monthly payments, rehabilitated his

loan, and his loans are no longer in a default status with the Department of Education.

Because Van Ru provided Mr. Berry accurate information, this court recommends

summary judgment be granted in favor of Van Ru on Mr. Berry's FDCPA claim arising out of

his allegations that Van Ru provided false representations regarding the Standard Rehabilitation

or Affordable Rehabilitation Programs.

### 3.  Verbal Agreements

Mr. Berry argues that Van Ru violated § 1692e(10) through Mr. Khayou's statement in

the initial call that "all agreements have to be verbal" in relation to the rehabilitation program.[74]

Mr. Berry claims this was deceptive because he was eventually given and signed a written

---

[71] *See* docket no. 53, Exhibit D at 18.

[72] *See* Recording 1.

[73] *See* docket no. 53, Exhibit D at 14.

[74] Docket no. 46 at ¶13.

agreement.[75]  Van Ru argues that the statement was not inaccurate within the context of the

initial call because Mr. Khayou was attempting to determine whether Mr. Berry would qualify

for the 15% Rehabilitation by verbally obtaining Mr. Berry's financial information.  And Mr.

Khayou also informed Mr. Berry that the agreement would not be finalized until his income and

expenses were verified.

However, even assuming that this statement was false and deceptive, this court concludes

that it does not constitute a violation of § 1692e.  As noted above, for a statement to violate this

portion of the Act, it must be material. *See Wade*, 2014 WL 3530146, at *2.  A false statement is

considered material if it would impact the least sophisticated consumer's decisions with respect

to a debt.  *See  Hudspeth*, 2013 WL 674019, at *4 (citation omitted).  Mr. Khayou's statement

may have been false but it was non-material.  It was "not likely to mislead the least sophisticated

consumer," nor did it in fact mislead Mr. Berry.  *Wade*, 2014 WL 3530146, at *2 (quoting

*Donohue*, 592 F.3d at 1027).

Because Van Ru's false statement that all rehabilitation agreements must be verbal was

not material, this court recommends summary judgment be granted in favor of Van Ru on this

claim.

### D.  15 U.S.C. § 1692d(6)

Mr. Berry alleges that Van Ru violated § 1692d(6) through Mr. Khayou's failure to state

that he was calling from Van Ru during the initial call.  "A debt collector may not engage in any

conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt," which includes, "the placement of telephone calls

---

[75] *See id.*

without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). While Mr. Khayou stated that he was calling on behalf of the Department of Education, he failed to inform Mr. Berry that he was a representative of Van Ru. Thus, Van Ru violated this portion of the FDCPA.

However, Van Ru argues that it is entitled to the bona fide error defense because it did not intend to violate the FDCPA. Van Ru states that it has specific policies and procedures to avoid such a violation. Van Ru further contends that had Mr. Khayou followed the training he received on these policies and procedures, he would have provided the required meaningful disclosure of Van Ru's identity during the initial call.

Under the FDCPA, "[a] debt collector may not be held liable in any action . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." 15 U.S.C. § 1692k(c). To assert the bona fide error defense Van Ru must demonstrate "that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006). To succeed on a motion for summary judgment, Van Ru must "establish a bona fide error for each and every alleged violation of the FDCPA." *Caputo v. Prof'l Recovery Servs, Inc.*, 261 F. Supp. 2d 1249, 1259 (D. Kan. 2003). Conversely, Mr. Berry "must establish that there was no bona fide error for each and every alleged violation of the FDCPA." *Id.* In particular, Van Ru "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. If [Van Ru] meets this initial burden, [Mr. Berry] must then demonstrate with specificity the existence of a disputed material fact."

*Johnson*, 443 F.3d at 724 n.1.   If Mr. Berry fails to specify a disputed material fact, the bona fide error defense bars his claim, and Van Ru is entitled to summary judgment as a matter of law. *See id.*

With regard to the intention prong, "a violation is unintentional . . . if the debt collector can establish the lack of specific intent to violate the Act." *Id.* at 728.  This "prong of the bona fide error defense is a subjective test," and "subjective intent can often only be shown by inferential evidence." *Id.* at 728-29.  However, "the bona fide and the procedures prongs are necessarily objective tests." *Id.* at 729.  "[T]he bona fide component serves to impose an objective standard of reasonableness upon the asserted unintentional violation." *Id.* (citation and quotations omitted).  "[T]he procedures component . . . involves a two-step inquiry: first, whether the debt collector maintained—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were reasonably adapted to avoid the specific error at issue." *Id.* (citations and quotations omitted).

"A debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional.  In other words, a violation is unintentional for purposes of the FDCPA's bona fide error defense if the debt collector can establish the lack of specific intent to violate the Act." *Id.* at 728.  There is no evidence in the record to support a finding that Van Ru intentionally violated the FDCPA through Mr. Khayou's failure to disclose that he was calling from Van Ru.  Mr. Berry argues that Van Ru is required to provide testimony from Mr. Khayou to prove that his failure to comply with Van Ru's policies and procedures was unintentional.  This court does not agree.  Van Ru has provided evidence of several other calls between Mr. Berry and Mr. Khayou, in which Mr. Khayou provided meaningful disclosure of his identity to

Mr. Berry.  This evidence supports Van Ru's assertion that the violation was unintentional. Furthermore, Mr. Berry's contention that Mr. Khayou was somehow motivated to omit that he was calling from Van Ru is without merit.  As explained in Van Ru's extensive procedures, if Van Ru's representatives make materially false statements, they are subject to discipline, including termination.

Mr. Khayou's identification of Van Ru's client, the Department of Education, further demonstrates that any error was in good faith, genuine, and bona fide.  As noted above, Van Ru maintains specific and extensive procedures to avoid such errors.  This court concludes that Van Ru has carried its burden of establishing bona fide error by showing that Mr. Khayou's failure to disclose that he was calling from Van Ru was an unintentional error, the error was made in good faith, and Van Ru has established procedures reasonably designed to avoid such errors.

Because "[a] debt collector has no liability . . . if he violates the act in any manner, including with regard to the act's coverage, when such a violation is unintentional and occurred despite procedures designed to avoid such violations," *Johnson*, 443 F.3d at 728 (quotations and citation omitted), this court concludes that Van Ru is entitled to the bona fide error defense. Based on the foregoing, this court recommends that summary judgment be granted in Van Ru's favor on Mr. Berry's § 1692d(6) claim.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Van Ru's motion for summary judgment be **GRANTED** with regard to each alleged violation of the FDCPA in Mr. Berry's Amended Complaint.  This court further recommends that Mr. Berry's motion for partial summary judgment be **DENIED**.

******************

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 11th day of September, 2017.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge